Good morning, judges. May it please the court. Ronnie Richter on behalf of the appellants Michael and Heather Livingston. We're here today because the district court abused its discretion under Rule 59 E and effectively served as its own court of appeals and reversing its original denial of summary judgment in this case and ultimately granting summary judgment. We're asking the court to reverse that order and remand this case back for trial. The case is a procedural odd duck. On June 20th, 2019, there was a report and recommendation after a very well developed record in this case with lots of deposition testimony, voluminous submissions to the court and the magistrate made a report and recommendation to the district judge recommending summary judgment be granted in this case. Uh, an important thing happened after that report and recommendation, and that is this court issued its opinion and Gilliam versus Sheely. And we supplied the court with a supplemental brief prior to its ruling on its first order for summary judgment. On September 20th, 2019, three months after receiving the report and recommendation, the court entered a very well reasoned, lengthy order denying summary judgment, adopting most of the arguments that will make to this panel today. Uh, and subsequently, under apparently the authority of Rule 59 E several months later in February of 2020, that same district court judge reversed itself. Ah, literal 1 80 of the positions that were taken in the first order. Your honors, we believe that the court aired in three material respects that we would like to address to you, sir. Excuse me. Before you get there, maybe you can tell me, uh, without making an assessment, whether that's legal or not. Tell me, did anything happen? Was there a hearing? Was there an additional piece of, uh, uh, an additional fact put in the record? Were there new law put it to the court? No, Your Honor. Nothing happened. Not from our perspective. I'm asking about what happens to period. No, there were no evidentiary supplements to the record. There was no change in the case law authority. The Gilliam case was the change in authority, but that case issued before the first summary judgment order, and that case is addressed in the first summary judgment order. Was there? Were there papers filed? Legal papers filed by the sides? There were. There was a motion motions for reconsideration under Rule 59 were filed by the respondents, and those matters were briefed to the court. We took the position that there is nothing new here. There's no new evidence. There's no, no, no change of law. There's no reason for the court to revisit an already well considered order that issued the first time. Let me ask you something. 59 applies to judgments, does it? Yes. Yes, Your Honor. There was no judgment. Was there? Your Honor, I'm not sure the answer to that question. There was no answer to the question. It was not a judgment. It wasn't final. It was a ruling saying we're gonna go ahead and try this case. That's correct. Okay, that's not a judgment. Yes, sir. That's a ruling on a matter of law, and the court changed its mind. Now, is there any problem with the court realizing it didn't do what it wanted to do, or it made an error of law that it can't correct itself before judgment? I think that's an extraordinary proposition. I think there is, Your Honor. In this sense, the authority that was signed... Well, it's not 59, then. You've got to find me some other authority, because a judge makes a ruling in a trial and leaves out some evidence, and he says later, and this happens a lot, he says later, I made an error on that. I'm gonna let that in, or vice versa. I'm gonna exclude it. And then he instructs the jury. He's changed his mind about it. He's trying to reach the right result in good faith. Now, you're saying we have to lock judges into their initial takes on any kind of ruling during the course of a trial? Well, no, Your Honor. I'm not suggesting that. I'm suggesting that the 59E you just conceded doesn't apply. We're talking about an order, an interlocutory order entered in a case saying we're gonna proceed to trial, and then the judge later saying we don't need to proceed to trial. Well, Your Honor, the issue... I agree exactly with what you're saying, except that the authority that she cites for the proposition that she was permitted to do what she did was Rule 59E, and we believe that that's true. I mean, that doesn't mean it is. Do you agree with everything that the other side says? No. Of course not. I think we do much better to get to the merits of this thing, but I'll leave the argument up to you. Well, I'm happy to go to the merits, Your Honor. If we look at the merits of what was done in those two orders, again, we take exception with her ability to revisit it on the 59E, but having revisited it, she revisited... Let me... Okay, you're persisting in that, and that's your privilege. Take me through the argument of why 59E applies. Your Honor, 59E does not apply. Well, then why are you saying she violated the standard of 59E? I'm saying that she violated the standard of 59E because it's limited to circumstances where there's been a change of law, there's new evidence, or there's a basis to correct an error to avoid... I know, but is that relevant? If 59E doesn't apply, is any of that relevant? Your Honor, it's only relevant in the sense that it's an abuse of discretion standard, and it's our position that she abused that discretion by taking action under the apparent authority of that rule that she was not authorized to take. Why wasn't she authorized to do that? Your Honor, 59E says a judge who makes a ruling, an interlocutory ruling during the course of a trial or the proceedings leading to a trial, can't change its mind. The court can say, I'm going to exclude these witnesses, and the lawyer comes back and says, hold it. I really need these other witnesses. I want to lay on some more evidence to the jury, and the judge says, well, I'm going to let you do one more witness. Can't he do that? Or she? Well, Your Honor, I... I can't tell you how many times I've changed my mind on things during the course of proceedings. You see things from different vantage points. You see the lawyer didn't have as fulsome an argument. You say, well, maybe you have a point there. A good judge has to react to try to get to the right result and produce a fair trial, and during the course of that, if he makes an interlocutory temporary ruling pre-judgment during the course of the trial, he's got to be able to reverse himself, or she's got to be able to reverse herself if she thought it was wrong. Your Honor, I certainly respect the court's point of view on that. I don't believe... Well, give me some law that says they can't do that. I cannot, Your Honor. I cannot. I believe the authority is under 59E. I think the case law is clear on what it affords the court to do and not to do, but I'm also equally convinced that I'm not going to change your mind about that. I'm not trying to pigeonhole judges into... You would change my mind if you had some law or some persuasive argument, but you have conceded that 59E doesn't apply, and so I'm asking you what rule or what principle applies that a judge can't change his mind during the course of a trial. And I can't set the authority that says that, Your Honor. Okay, well, why don't you go ahead then and talk about the rest of your argument? Yeah, so having revisited her order, in the first order, she addressed the Gilliam case, which we think is on point and dispositive of the issue before the court. And in her first visit to the Gilliam case, she ordered that the Fourth Circuit has recently spoken about the use of the exclusionary rule regarding coerced confessions. Whether a confession is involuntary is a question of fact to be determined by the totality of all the interrogation. Therefore, the allegedly coerced confession cannot be used to determine the issue of probable cause in the report. Can I ask you about that? Yes. You make a powerful argument about the conduct of the sheriff. It actually provokes a strong reaction when you see a sheriff continue to question after somebody's asked for counsel and then tries to manipulate around it and doesn't give Miranda rights and all those things. But we have a probable cause hearing before a magistrate of some kind, and he testifies before that person under oath and says basically the same things he said to the sheriff. Now, why isn't that a legitimate part of the record? Your Honor, that is a part of the record, and that hearing was in the family court. Family court, family court judge. But why? He's standing in the family court, and was he under oath? He was under oath. And so he testifies, and he says all the same things. Your Honor, the test for the probable cause that we're here to evaluate is what was known to the officers at the time of the arrest. Obviously, that's well after the arrest. So did they have probable cause at the time of the arrest of Michael Livingston, and they did not absent his bewares confession? Why not? You come to the hospital with a baby who has broken ribs, old healing of broken ribs, current broken rigs, broken skull, and both parents say there's been nobody else in the house, and they suggest that this is indicative of child abuse. They put it all together. It's a pretty troubling fact presentation. Unfortunately, it turned out to be untrue, as you know. He's trying to provide an explanation of how that occurred. He's not saying I did it. He's saying basically, well, there was, the baby was collected, and I held the baby. Maybe I held him too tight, or maybe the head hit the side here or something. He is trying to be helpful, but all of that basically is trying to take the blame so that his wife doesn't get blamed, but the only two people that are suspects are Michael and Heather, right? No, there is the child, Hannah, who's a nine-year-old in the household as well. It's also known, and there's actually a threat by the officers that we're going to interrogate Heather. Your Honor, your point is well taken that this is a factual inquiry, and the issue on probable cause is based upon an objective standard, not subjectively what the officers believed at the time was a reasonable basis for them to believe there was probable cause without the coerced confession, and the record is replete with evidence that would suggest that there was not probable cause without the coerced confession. Well, how are we to take all that other evidence? I'm sorry? How are we to take all the other evidence? The husband presents a baby into the hospital with a broken skull, and then they find multiple injuries that occurred over differing times around the ribs. Your Honor, you're... What are we supposed to... How is the sheriff and the public authorities supposed to react to that? They're supposed to undertake an investigation. They did, and it wasn't resolved. There was no explanation that detracted from Michael. Your Honor, even that point of view, which is repeated in the court's second order, to find that the parents could not offer a plausible explanation at a summary judgment standard is not evidence of guilt. It's evidence of innocence. We're looking at probable cause for created by a court, so the only probable cause issue that you can argue is the arrest, and the arrest issue is based on what the officers had in hand when they made the arrest. Well, this is what the entire factual record would say about that. The first time the children were examined, nothing was revealed. The first time BSS and police came to the emergency room, they left, and the case was closed at 4.35 p.m. When Dr. Lubaroff first examined the children, her examination confirmed injury, yes. She added a layer to that by saying, it appears non-accidental. There's nothing about that that says Michael Livingston hurt his children. There's four billion people in the world, so an investigation has to start, and an investigation does start. No arrests are made at the hospital. No arrests are made, period, until Michael Livingston offers his coerced confession. Heather Livingston is examined first. No arrests are made. Michael Livingston is interrogated. He invokes his right to counsel. Some gamesmanship is played about the telephone and his access to counsel. When he can't find counsel, the examination recommences. He's not remirandized. No arrests are made. No action is taken to arrest anyone until such time as Michael confesses, and the testimony in the case was from that coerced confession, a thorough investigation would have followed that would have included things like interviewing the physicians, interviewing the pediatricians, interviewing others who had access to the children. That did not happen. When the matter was referred over to the magistrate for arrest warrants, the probable cause that was stated was Dr. Lubaroff's report and Michael Livingston's coerced confession. The facts in the case indicate that but for that coerced confession, there was insufficient evidence to make an arrest. Those are what the facts indicate. It's a summary judgment standard. I apologize for my time. You know, inferring the facts in favor of the plaintiff, the only reasonable conclusion that could be made here is that we have a factual dispute that has to be submitted to the jury on that issue. Uh, let me just ask you one question before, because I'm going to raise it the other side. The district court didn't rely on any immunity, did they? Qualified or absolute immunities? No, sir. Were they raised by the defendants below? Yes, they were raised. All right. Okay, thank you. Thank you. All right. Who do we have up next here? Mr. Lindeman, are you next? I am, your honor. Okay, why don't you proceed? Thank you, your honor. May it please the court, my name is Andrew Lindeman. I'm representing several of the appellees, the three Richland County Sheriff's deputies, as well as the Richland County Sheriff's Department. My colleague, Mr. Gessner, who has five minutes after I am through, represents the South Carolina Department of Social Security. I'm going to ask you a couple of questions on the procedural issue. And I think that's probably been discussed enough, but just to make a couple of points. Number one, the issue that's on appeal in this case is an interlocutory order. That's without question. Ultimately, or the initial ruling, excuse me, was an interlocutory order by Judge Childs. It granted in part and denied in part the summary judgment motion. So it was interlocutory. Clearly, there's precedent from this court, the American Canoe Association versus Murphy Farms. Yeah, but see, that's inapplicable, too. That doesn't make any difference. You know, the order that we're looking at is the early order that the judge denied the summary judgment motion. That's the order where she changed her mind. That's correct, Your Honor. All right. Now, the question is, is she allowed to change her mind with respect to that order? That's not the certified order. I mean, you get into a lot of complexities when you start talking about Rule 54B or 1292B and the nature of those orders, whether they are judgments in our review of those. We're not there. We're at an interlocutory order entered in the early part of a judicial proceeding, and the court changes her mind on it. And there's clear precedent, Your Honor, as you were discussing with opposing counsel that allows a trial court to revisit and reconsider an interlocutory order. Your colleague on the other side said you relied on the rule, and that's why he was talking about the rule. But the rule isn't applicable, right? Because this is an interlocutory appeal. Right. Technically, 59E was not the appropriate standard. It was Rule 54B, which specifically says that interlocutory... It wasn't Rule 54B. 54B talks about certifying an order for appeal. That's the second order that the judge entered. What we're talking about is can the judge change her first order? Her first order was a procedural order saying we're going to trial. We're not going to dispose of this on summary judgment. And the question is, can she change her mind on that order? And there's clear precedent that allows that with an interlocutory order, Your Honor. Well, let me move through the... It isn't an order. It's just a ruling, like an evidentiary ruling. Haven't you ever been in a case when the court says, no, I'm not going to let it in, and then you make... And the court says, well, I think I will let it in. That's correct. None of those are appealable under any Rule 59 or 54 or anything else. Well, and Your Honor is exactly correct. I mean, it is an interlocutory ruling by the court, so it's always subject to correction or change up until the time of final judgment. And ultimately, that's what occurred in this particular case. I would appreciate it if sometime in your argument, you can get to the argument that your colleague on the other side ended up with, which is whether there was probable cause without this statement from the father. Absolutely. And actually, I was heading right there. In essence, this entire issue regarding the allegedly coerced confession and whether or not the application of the exclusionary rule applies in a Section 1983 case, obviously, all of those legal issues are raised and before the court. But the court doesn't even need to reach that issue because ultimately, as the district court ruled, even absent the there was sufficient evidence that was developed at the hospital before Mr. and Mrs. Livingston were even transported to the Sheriff's Department for interrogation. There was sufficient evidence that was developed at the hospital that would provide probable cause for the arrest under the child abuse statute. And in a nutshell, those are several different points. Number one, the actual child that was brought in for medical treatment was diagnosed with a skull fracture. Ultimately, it was determined that the child also had a number of broken ribs, both old and new. Then there was a request that his twin brother be brought in. The twin brother was brought into the hospital and was examined. And ultimately, it was determined that the twin brother also had fractured ribs. So you had very similar injuries to both of the twin infants. The twin infants were both examined by two different physicians. The emergency room physician, Dr. Donahue, offered the opinion that the injuries were not accidental, that they were caused by a specifically caused by non-accidental trauma. And then ultimately, they called in a child abuse specialist who was Dr. Susan Luberoff, who was also a defendant in this case, even though she's not part of this appeal. And she examined as well issued a report and a report. She says the child's injuries are not explained and are most consistent with non-accidental trauma. That report was available and provided to the law enforcement officers as well as DSS prior to the interrogation of Mr. and Mrs. Livingston. Neither parent, it is undisputed, neither parent could offer any explanation for the injuries to either medical personnel or to law enforcement authorities. They cannot provide any type of explanation. And lastly, they were the only conceivable caregivers by their own admission. In fact, both ultimately testified that the nine-year-old daughter, Hannah, that the child's two twins were too young that she didn't participate at all in their care. So the only caregivers, it was undisputed, were the two parents. So ultimately, that information provided probable cause for the arrest of Michael Livingston under the South Carolina Child Abuse Statute without even any consideration of the confession itself. And quite frankly, that's as far as I would submit that this court needs to go with that issue. That is a determination that was made by the district court. And there was sufficient evidence as just described to support that. Those historical facts are not disputed by the appellants. The record includes Dr. Lubros' report, which includes the exact language that I just quoted to the court. The appellants argued that the deputies did not believe they had sufficient evidence for probable cause because they proceeded to interrogate the two parents and obtain a confession from Mr. Livingston. Of course, it is well settled, and the district court mentions this well, that the subjective beliefs of the officers are totally immaterial. It is purely an objective standard. And applying the objective standard to those historical facts that I just outlined clearly showed that there was probable cause. In addition to that, the appellant's own law enforcement expert, James Burgess, testified that in his opinion, Dr. Lubros' opinions, particularly given the fact that she was a child abuse expert, someone called in specifically to offer opinions and look on those issues, was sufficient to provide probable cause for the arrest. So I would submit that that's as far as the court needs to go. There is a couple of additional legal issues. There was a question, I can't remember which of you judges asked that, but whether or not qualified immunity was raised by all of the individual defendants, including my three sheriff's deputies. Ultimately, the district court didn't reach that issue. It was reasserted again on reconsideration. Again, she did not find it necessary to reach that issue, but we've raised it as an additional sustaining ground since obviously this court has the ability to decide cases on whatever ground may appear in the record. But qualified immunity was argued below. And quite frankly, if those historical facts that I just outlined do not create probable cause, and I certainly think they do, it is certainly not without dispute under the qualified immunity standard that those historical facts would not lead a reasonable officer to believe that he or she has probable cause. In the Orem versus Gilmore case, this court cited an Eighth Circuit case talking about arguable probable cause. That's a concept that a number of other circuits have recognized. In the Orem case in 2020, this court also recognized that as well. And clearly in this particular case, if those historical facts, as I've outlined, do not give rise to probable cause, they certainly give rise to arguable probable cause, and qualified immunity should be granted as to the individual officers. Lastly, just touching on this issue dealing with the confession itself, one of the legal issues that has arisen is whether or not the exclusionary rule even has any application in Section 1983 cases. There is a number of cases from other circuits, as well as from the U.S. Supreme Court in the Pennsylvania Board of Probation and Parole versus Scott case, where the Supreme Court has declined to extend the exclusionary rule to any proceedings other than criminal proceedings. The Fifth Circuit, the Second Circuit, and the Ninth Circuit have also, and the Eleventh Circuit, we've cited all these cases in our brief, have also refused to apply the exclusionary rule in non-criminal context, including Section 1983 cases. Let me ask you on that. Why would anybody have to get into that in this case where he made the same statement in court on the probable cause hearing? Well, I agree with you, Honor. Identical. His statement was almost identical, and it was made under oath before a court. That's correct, and it was actually more than a year later was in family court, and he did make the exact same statement that constitutes the confession under oath before the family court as part of the DSS proceedings. And that can certainly come in, couldn't it? Well, that certainly supports the finding of probable cause, absolutely. It also supports... Well, that supports probable cause from that point on, but the argument that Michael makes is that his arrest wasn't supported, and you have a two-pronged response. You're saying the evidence was sufficient, number one, and number two, the officer had qualified immunity in any event in those circumstances. That's correct, and then a third argument that you don't necessarily have to reach, but that under the exclusionary rule, and that includes the exclusionary rule under Miranda, is not applicable in a 1983 case to ultimately that was an additional ruling by the district court in this case. Ultimately, Your Honors, that triggers, of course, this Gilliam case that this court issued its decision on in 2019, which is obviously the principal case that the appellants rely on. And in the Gilliam case, this court did not consider, and I'm assuming it was not raised to the court, that the exclusionary rule is not applicable in a section 1983 case. In addition, there is a previous precedent from this court, the Burrell versus Virginia case from 2005, which does not expressly decide the question of whether the exclusionary rule applies or not, but it does implicitly discuss that, because in that particular case, there was the argument that the motorist in that case didn't want to turn over his insurance card when he was pulled for failure to, during a traffic stop and failed to provide proof of insurance. He claimed that he had a Fifth Amendment right against self-incrimination. This court ultimately found that that did not apply, relying on the Chavis versus Martinez case from the U.S. Supreme Court, and finding that the Miranda exclusionary rule only applies when there's an attempt to use coerced or involuntary testimony in a criminal trial itself, the trial itself. And ultimately, well, to take that principle on a little bit, it would be sort of strange in a civil case, a 1983 case, to allow evidence to come in where the evidence was obtained by a shotgun held to a man's head and a knife at his throat, and he signed a confession. I mean, it goes to the legit, possibly to the legitimacy of the evidence, whether it was real evidence or not. I'm not sure we have to take that principle all the way, but the danger of your argument leads there. Can I have 30 seconds to adjust? I think Judge Niemeyer, I've given that a great deal of thought, and I think probably where the distinction lies, and I understand the and coerced confession. And this particular case, of course, there's no allegation of anything being fabricated. I think the distinction really should be if something is fabricated, it's obviously false evidence, and false evidence can't be relied on to establish probable cause. I mean, that's well established in Frank's v. Duckware and numerous cases since Frank's. But there's a where the officers are simply being alleged. Number one, in this case, they did give Mr. Livingston his Miranda rights. What at least the suppression hearing the state judge was critical of is that they didn't give him his Miranda rights again after he didn't reach his an attorney and then decided to start confessing or providing an explanation that he should have been Mirandized again at that point. And then there's also the question in this case as to whether or not the interrogation technique of talking about what further procedures they would follow, such as interviewing the wife and potentially interviewing the daughter, whether that was an appropriate interrogation technique. So you have a situation that's a good bit different, of course, than Gilliam, where you had an absolutely fabricated confession. And you were, of course, dealing with significant intellectual disabilities, which, of course, we don't have here either. I think that's where the court could raise a distinction or even reach that issue. I don't believe you need to reach that issue. All right. Please affirm the court below. Thank you. Thank you, Mr. Gessner. Yes, Your Honor. Good morning. Evan Gessner on behalf of DSS may please the court. I think everything regarding probable cause has been argued very well by Mr. Lindemann. So I'm going to touch on how all this affects DSS. With respect to Michael Livingston's written confession, I think Gilliam is inapplicable. And I think that written confession can absolutely be used in the probable cause analysis. One key piece of the Gilliam case was the fact that the officers knew the confession had been coerced and fabricated, and therefore they can't rely on a knowing false confession to establish probable cause. Here, no one at DSS had any knowledge about the circumstances of Mr. Livingston's confession. They were not present for the interrogation. They had no knowledge of how it was obtained. DSS was simply told that Michael Livingston confessed. They were given a copy of the confession, and they knew that Michael Livingston had been charged. So from DSS's standpoint, in addition to all the other pieces of evidence that establish probable cause, I think unquestioningly the written confession comes in. With respect to DSS, plaintiff's or appellant's claims against them are a little bit different because they do raise a claim for Heather Livingston with respect to the Child Protective Services investigation and the family court action against her. I would point out that Michael Livingston in his written confession stated that Heather had witnessed him abusing the children and didn't do anything to stop him or alert authorities. That would clearly give DSS probable cause to believe that Heather Livingston had severe injuries to the children, the fact that Heather and Michael were the only individuals that had access to the children, and the lack of any explanation by them as to how these injuries occurred. I would point out that appellants in their arguments simply point to the pieces of evidence they believe shows their clients were innocent while ignoring all the evidence. Now, a probable cause analysis requires a totality of the circumstances, and it does not require that every piece of evidence be fully run down and that there be a credibility determination. It's simply an analysis as to whether or not the prosecuting entity had reasonable belief that a crime had been committed. I think all the evidence that's been presented in this case, and it's in our briefs and the appendix, Mr. Lindeman went through quite thoroughly. The only conclusion is that there was probable cause for DSS to maintain the family court action against Michael and Heather Livingston. We also, on behalf of DSS, there's an additional sustaining ground that was not ruled upon by the district court that the only claim against DSS is a state tort malicious prosecution claim. In South Carolina, we have the Tort Claims Act, which covers DSS as a state agency. The Tort Claims Act contains an immunity for state agencies for any claim that arises out of the initiation or prosecution of any judicial or administrative proceeding. So, I think that grant of immunity would apply irrespective of anything else. As the appellants mentioned in their brief, two pieces of evidence that I would argue is wholly irrelevant. They refer to comments made by one DSS attorney and some allegedly racist comments made by a DSS caseworker. I think those are wholly irrelevant here. They have nothing to do with whether or not probable cause might exist. Consequently, I think the district court got it there. The grant of summary judgment was entirely proper, and I would ask that this court affirm the district court's holdings. All right, thank you. Mr. Richter, you have some rebuttal? I think you have to unmute. Yes, thank you, Your Honor. Yeah, I think it's important to remember the backdrop of this entire analysis is Rule 56. So, when this came to the court's attention, it came as a 56. Obviously, in a 56, the standard is that the facts and inferences are interpreted in favor of the non-moving party. It's in that context that, yes, we talk about the facts, and it's especially important because it is a totality of the circumstances analysis. And so, there are a couple of important facts that were omitted by my colleagues. There is evidence that the confession was not simply coerced. It was fabricated, and that evidence is the testimony of the record was that when Michael Livingston finally decided to fall on the sword for his family to protect his wife and his child from criminal prosecution or interrogation, and when he first explained the injuries in trying to take the blame, his account of what happened didn't match the injuries. And so, his story was shaped with these officers to try to match the injuries that the children suffered. And it's through this process that they developed this coerced confession that matched his alleged conduct to the injuries that were suffered by the children. I think there's some place in there where someone says, well, that doesn't make any sense. It couldn't have happened that way. So, tell me another way. And so, ultimately, they came up with the idea that Michael had handled the children too roughly, maybe squeezed them too tightly around the chest. Maybe the child arced his head back while Michael was holding the child and struck his head on the knee. And that is not just a coerced confession, but it's fabricated to try to match the evidence as the officers understood it to the injuries that the children appear to have suffered from. I don't know how Gilliam could be more on point than in this case, except that our case is better than Gilliam. In the Gilliam case, the opinion is... Let me ask you this. I don't understand the full significance of this, but it keeps bothering me because the statement that Michael said to the court, he said, I am solely responsible for the injuries of these two boys. There's no way that Heather could have done it, etc. I would get frustrated and cause those injuries myself. I can guarantee you that during any investigation, there will not be any evidence to show that Heather would cause it. So, he's explaining, he said it was out of his control of his frustration that those injuries were caused. Now, he's telling that to the court under oath. And it seems to me to say that that's fabricated because he said the same thing before the officers in a situation where he didn't get his constitutional rights honored. I'm having a hard time coming to grips with how I handle that. Your Honor, I think how we handle that is, first, it was not evidence that existed at the time of the arrest. Second... No, but you keep arguing that it was totally fabricated, trying to bring it under Gilliam. Yes, Your Honor. And the fact that he re-ratifies it and states it under oath in court is hardly indicative of the fact that the earlier statement was fabricated. Your Honor, those are facts in dispute that a fact finder someday... Well, what's disputed? I'm reading right here from the transcript and he's in court and he's saying, I take responsibility for it. I was frustrated at the children and probably caused those injuries. Well, Your Honor, the dispute, the debate then is he is still trying to protect his family. Subsequent to this, the family is medically... I know, his motive may be that, but are you saying he testified falsely in family court? Yes, he subsequently recanted that testimony and a jury someday would have to wrestle with... But isn't that something that is not linked to the coercive? In other words, this was not coerced, what he said. He can recant and that can be measured later by somebody. Yes. It is to say that his statement that he took was fabricated by the sheriffs. It's fabricated by him maybe in order to get his wife off, but it is real evidence that can be assessed, evaluated, weighed, and looked at. Your Honor, I have to keep it coming back to the point. It was not there at the time of the arrest. Yes, I agree with you. It is a fact in the record that someday a judge or jury is going to have... I'm talking about now. You're not comprehending my difficulty. My difficulty is you talk about the confession before the sheriff's being fabricated as if they caused that to happen. Now, your explanation is he fabricated it, not the sheriffs, and he fabricated it to exculpate his wife. But the question is, then that's not linked to the sheriffs because later he gives very same statement in court under oath before a judge and says the same thing. Now, maybe that was fabricated too, but it was fabricated by Michael, not by the sheriffs. They didn't testify then. Yes, your Honor. What I'm saying is that in the context of that interrogation, the officers shaped that statement so that his account fit the injuries and yes, under oath, in front of a subsequent judge, he repeated that story before he subsequently recanted it. Those are the facts. But again, it's a summary judgment standard. It's a totality of the circumstances. There is evidence in the record that the confession was not simply coerced. It was fabricated. It was shaped. It was manipulated. In the Gilliam case, a distinguishing factor is there was an effort to suppress the confessions in Gilliam and the state court would not suppress those confessions. In this case, after a full evidentiary hearing, a state court judge hearing all the facts and circumstances suppressed that confession as being violative of Michael Livingston's constitutional rights. I'm not saying that's preclusive, but I'm saying that is also a fact in the record. It is a fact. What I don't understand is suppose we exclude that statement and determine here whether there was probable cause. We don't look at it. We don't consider yes. There's nothing wrong with that, right? There's nothing wrong with that. And that's where I would urge your honors to see that minimally is a factually rich record about what probable cause existed or what did not. And the facts and the circumstance indicate... Well, there isn't... If we exclude that, we know that the record, you don't disagree with anything else that has been put forth with respect to probable cause. We look just at that evidence not the confession, not the statement, and see if there was or was not probable cause. I think that's proper analysis. And I think in a subjective standard, there are facts in dispute that would prevent someone saying as a matter of law that probable cause existed independent of that coerced confession. Okay. I understand your position. Thank you. And what fact was disputed at the time that probable cause was needed? In other words, we had two doctors giving opinions that suggested, that indicated that this was not accidental. It was deliberate. And we have two children showing injuries. That's all true. And we have evidence that indicates who the probable cause is. Judge Childs, in her first order of denying summary judgment, looked at those very same facts and distinguished this case from the State versus Smith case. I want to know what the facts are disputed. I'm not going to another case. In other words, what facts leading up to the probable cause facts recited by your colleague there, which ones are disputed? The facts are that the children were five weeks old. What? I'm sorry. The what? The children are five weeks old. The injuries are both old and new. The only thing the medical testing confirmed, at least at the time, was the fact of an injury. And the only thing Lou Brough added was her opinion. No, it was all the new injuries. All the new injuries. Correct. All the new injuries. That's what the medical testing confirmed. Both children. Correct. And there was opinion evidence that they were not accidental. Yes, there was a medical opinion that it appeared non-accidental. And there was a child expert that said that they had, in her view, that they had been inflicted. There were two experts. It doesn't lead to the inescapable conclusion as a matter of law that must have been caused by the parents. I understand that. We're just channeling up what evidence there was. Besides, I thought that's what Judge Niemeyer asked you. Your colleague on the other side talked about evidence exclusive of the confession or the statements by Mr. Livingston. And we're just asking you to say what those are. But do you disagree with anything your colleague said existed separate and apart from the confession by Mr. Livingston? Now, I understand you say they don't come up to probable cause. But do you say they are disputed or they do not exist? I say, Your Honor, yes, those facts exist. And many more facts exist under the totality of circumstances that lead us to a factual inquiry ultimately. And that is impossible to say as a matter of law. That's what I'm trying to find out. What is the factual dispute? What are those disputed facts? The facts on the other side? Right. The facts on the other side are that the first time the children were medically examined, it revealed nothing. The first time they were what? It revealed nothing. The first time they're examined. Okay. The first time DSS and the police show up to the hospital, they take no action. Do you dispute the fact that when they took the scans, they saw broken bones? No, sir. No, sir. Well, what's that? What's that got to do with the dispute? That doesn't dispute anything. Well, it's also a fact that when the injuries were discovered in Jackson, and Michael was asked, would you bring Joey for an examination? He brought the child immediately, which does not appear to be the actions of a guilty man, knowing that he's abused the children. So there are many other facts. Well, tell us your three best contrary facts. Those three don't do it for me. Well, your honor, much of the evidence is in the absence of evidence. It's the conclusion that because the parents can't give a plausible explanation for the injuries, they therefore must be responsible for them. We reject that. This is summary judgment. That's evidence that's that's not evidence that points to their guilt, that they can't explain how their children are hurt. But in the court's order, they ultimately look at that as if you're guilty unless proven innocent. I mean, that seems to be the point of view that poisoned the whole examination. Actually, I thought the only question was, was there sufficient evidence at that time for the public officials to conclude there's probable cause that there was abuse going on? Your honor, and the question is, and the evidence that supported that conclusion, surely they didn't have all the evidence because you don't ever have all the evidence, but they had evidence indicative of what they rationally believed. That's their point of view, was sufficient to say probable cause that abuse was occurred. Your honor, I respectfully submit. And my question really was, what fact that was advanced to support that is disputed? Well, it is a fact that that medical evidence did not result in any arrest. It is a fact that no arrest occurred until there was a coerced confession. It is a fact that Heather was investigated, Heather was interrogated, and no action was taken against Heather. It's a fact that the officer said that had they not obtained a confession, they would have undertaken a thorough investigation. Those things did not happen. If that evidence had been sufficient at the hospital, they would have been arrested right there in the hospital. That did not happen. What's wrong with seeking more evidence, finding out a further explanation, filling in the facts, filling in open questions. That doesn't mean that the facts that they had didn't... I think your argument has to be those facts didn't amount to probable cause. I don't think you're disputing those facts. I think you're saying the facts they had before the confession were insufficient to justify a finding of probable cause. Yes, sir, your honor. I am saying that. Okay. Thank you for the additional time you afforded us. Thank you. Yeah, thank you. This is a serious case and it's one of those things there's no question about it. The ending is nice that they are together apparently now. I don't know if that's totally redemptive, but it's better than other alternatives too. All right. Thank you very much. What we'll do, I want to say that we would normally come down and shake your hands. Obviously, we can't do that, but we do greet you and thank you for your arguments and welcome you back to the court another time. We'll take a five minute recess. And then proceed on to the next case.
judges: Paul V. Niemeyer, Diana Gribbon Motz, Allison J. Rushing